IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-573-FL-KS

| | | |
|---|---|---|
| ANNE MARIE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| FRANK BISIGNANO, Commissioner | ) | |
| of Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions, and this matter is ripe for decision. Having carefully reviewed the administrative record and the parties' briefs, it is recommended that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for DIB on January 28, 2022, with an amended alleged onset date of October 31, 2021. (R. 14, 180–83.) The application was denied initially and

---

[1] Frank Bisignano became Commissioner on May 7, 2025, and is therefore substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

upon reconsideration, and a request for hearing was filed. (R. 14, 71, 85, 105–06.) A hearing was held on December 8, 2023, before Administrative Law Judge ("ALJ") William Andersen, who issued an unfavorable ruling on April 1, 2024. (R. 14–62.) On August 8, 2024, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff initiated this action on October 7, 2024, seeking judicial review of the final administrative decision.

**DISCUSSION**

## I.    Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and

2

second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.     Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and

3

denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015).

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2026. (R. 16.) At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 31, 2021, the alleged onset date. (*Id.*) Next, the ALJ determined Plaintiff has the severe impairments of disorder of the spine, dysautonomia, and depression. (*Id.*)

At step three, the ALJ concluded Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 17.) The ALJ expressly considered Listings 1.15, 4.04, and 12.04. (R. 17–18.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except lifting/carrying fifty pounds occasionally and twenty-five pounds frequently, sitting for six hours, and standing/walking for six hours. [Plaintiff] can climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds occasionally, and balance occasionally. [Plaintiff] can work at unprotected heights occasionally, around moving mechanical parts occasionally and operate a motor vehicle occasionally. She can understand, remember, and carry[ ]out simple instructions. She is able to interact with supervisors, coworkers, and the public on a frequent basis.

(R. 18.) In making this assessment, the ALJ stated that he considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. § 404.1529, and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence." (R. 18–19.) At step four, the ALJ concluded that Plaintiff is not able to perform any past relevant work. (R. 22.) At step five, the ALJ determined, based upon Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: patient transporter (DOT #355.677-014), dishwasher (DOT #318.687-010), and floor waxer (DOT #381.687-034). (R. 23.) The ALJ concluded that Plaintiff has not been disabled under the Act since October 31, 2021. (R. 24.)

## IV. Plaintiff's Argument

Plaintiff contends the ALJ failed to account in the RFC for Plaintiff's need for off-task time/breaks due to dizziness caused by her dysautonomia. (Pl.'s Br. [DE #11] at 5–17.) In contrast, the Commissioner contends the ALJ sufficiently explained his RFC assessment and that substantial evidence supports the factual findings in the RFC. (Comm'r's Br. [DE #13] at 5–14.) For the reasons explained below, the undersigned agrees with Plaintiff and, therefore, recommends remand to the Commissioner.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996

WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1545(a)(1). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8p, 1996 WL 374184, at *1. In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(4). It is based upon all relevant evidence, which may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(a)(3). If necessary, an ALJ must "explain how any material inconsistences or ambiguities in the evidence were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7.

An ALJ must "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). The ALJ must specifically explain how certain pieces of evidence support particular conclusions and "discuss[ ] . . . which evidence the ALJ found credible and why." *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The Fourth Circuit has interpreted this to require an ALJ to "build an accurate and logical bridge from the evidence to his conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion . . . . [M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas*, 916 F.3d at 311 (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). Simply put, this means

an ALJ must "[s]how [his] work." *Patterson v. Comm'r of SSA*, 846 F.3d 656, 663 (4th Cir. 2017) (applying same principle to an ALJ's listing analysis). Such analysis—"[h]armonizing conflicting evidence and bolstering inconclusive findings," *id.* at 662—is a "necessary predicate" to determining whether substantial evidence supports the Commissioner's findings, *Monroe*, 826 F.3d at 189 (quoting *Radford*, 734 F.3d at 295). Where a court is "left to guess about how the ALJ arrived at his conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio*, 780 F.3d at 637.

The impact of Plaintiff's dysautonomia[2] on her ability to work is the key issue. Dysautonomia is an autonomic nervous system disorder that commonly causes, among other things, dizziness or lightheadedness. *See Powell v. Colvin*, No. 2:12-CV-3566-JHE, 2014 WL 2987663, at *3 (N.D. Ala. July 2014); Cleveland Clinic, *Dysautonomia*, https://perma.cc/K29Q-SJ3A (last visited Feb. 9, 2026). During the hearing before ALJ Andersen, Plaintiff stated that she had to stop working as a computer software engineer because she experienced dizziness that interfered with her ability to concentrate at work. (R. 38.) Plaintiff's dizziness and its functional impact was discussed throughout the hearing. (R. 39–52, 54–55.) Plaintiff consistently reported similar symptoms to the Commissioner in her application

---

[2] After seeing multiple providers, Dr. Sameh Mobarek, a cardiologist, diagnosed Plaintiff with post-concussive dysautonomia. (R. 903–08.)

7

materials. (R. 206, 216.) As Plaintiff notes in her brief, the treatment records are replete with references to Plaintiff's dizziness.[3] (Pl.'s Br. at 12–16.)

ALJ Andersen found Plaintiff's dysautonomia to be a severe impairment, which, by definition, means that ALJ Andersen found that the dysautonomia "significantly limit[s]" Plaintiff's ability to perform basic work activities. 20 C.F.R. § 404.1522(a); (R. 16). But ALJ Andersen discounted Plaintiff's statements about her symptoms because he found them "not entirely consistent with the medical evidence and other evidence." (R. 19.) The undersigned cannot trace how ALJ Andersen found that Plaintiff can perform work at the medium exertional level—notably with the capacity to occasionally balance; climb ladders, ropes, or scaffolds; and work at unprotected heights—while needing no RFC limitation for when Plaintiff experiences dizziness caused by her dysautonomia, the key symptom which Plaintiff says interfered with her ability to work as a software engineer and continues to interfere with her ability to work in general. The undersigned can only assume that ALJ Andersen discredited Plaintiff's testimony about her dizziness. *Cf. Mascio*, 780 F.3d at 637. This is problematic because the ALJ appears to have implicitly credited Plaintiff's statements about her dizziness at other points in the ALJ's decision. *Cf. Artis v. Kijakazi*, No. 5:20-CV-420-M, 2021 WL 7162304, at *5 (E.D.N.C. Nov. 17, 2021) (identifying similar problem with ALJ implicitly crediting a claimant's testimony), *M. & R. adopted*, 2022 WL 551244 (E.D.N.C. Feb. 23, 2022). Nowhere

---

[3] In the below analysis, the undersigned notes numerous portions of the record indicating Plaintiff's dizziness.

does the ALJ explain how or why he credited Plaintiff's testimony about her dizziness in certain respects but not others.[4] *See Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

The ALJ's evaluation of the medical opinion of consultative examiner Dr. Agustin Flores implicitly credits Plaintiff's statements about her dizziness. (*See* R. 22.) The Commissioner notes the ALJ imposed more restrictive physical limitations in the RFC than what Dr. Flores opined. (Comm'r's Br. at 9.) ALJ Andersen assessed a more restrictive RFC "due to the combined effect of back pain and *dizziness as reported throughout the record.*" (R. 22 (emphasis added) (citing R. 408,[5] 951).) The first citation is to an August 3, 2021, optometry note, which states that Plaintiff's dizziness "increases with factors unrelated to vision (head and heart rate)" and in which the optometrist expressed "susp[icion] [Plaintiff] will continue to improve through her vestibular therapy treatment and with new glasses." (R. 408.) The second citation is to primary care treatment records for telephone visits in September and November 2021, and an in-person visit in October 2021. (R. 951.) These notes indicate

---

[4] At one point, the ALJ appears to suggest that Plaintiff is untruthful because she claimed to have had a traumatic brain injury. (R. 20 ("The claimant attended a consultative exam in April 2023 where she reported experiencing back pain and depression along with anxiety, headaches, and dizzy spells. She claimed that she had a traumatic brain injury from the car accident, but in fact, treatment notes indicated that she had a possible concussion and sternal fracture that did not require treatment. (citation omitted)).") Following examination by WakeMed Concussion Program on June 30, 2021, Plaintiff was diagnosed and treated for concussion (R. 802–15), which is a type of traumatic brain injury, *see* Cleveland Clinic, *Concussion*, https://perma.cc/XD22-SKD7 (last visited Feb. 13, 2026).

[5] The Commissioner states the ALJ cited to R. 501. But the ALJ cited to Exhibit "5F/1," which corresponds to R. 408.

9

that Plaintiff continues to report dizziness. (*Id.*) When ALJ Andersen relies on these treatment notes (which themselves rely on Plaintiff's subjective reports of dizziness) in assessing the medical opinion of Dr. Flores, ALJ Andersen implicitly credits Plaintiff's statements about her dizziness. But ALJ Andersen does not explain why he credited Plaintiff's statements about her dizziness when evaluating Dr. Flores' medical opinion but not when evaluating the severity of Plaintiff's symptoms for purposes of assessing her RFC. *See Monroe*, 826 F.3d at 189.

The Commissioner contends that ALJ Andersen adequately explained the RFC findings because the ALJ's decision shows the ALJ "considered that Plaintiff did not need an assistive device despite her allegations of debilitating dizziness, the numerous diagnostic tests of her cardiac condition were often unremarkable, [and] . . . she experienced improvement with treatments like medications, vestibular therapy, and glasses." (Comm'r's Br. at 12 (citing R. 18–21).) Furthermore, the Commissioner seems to suggest, citing *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017), that the ALJ's RFC assessment is supported by substantial evidence because the ALJ assessed the same RFC as the state agency doctor who reviewed Plaintiff's claim on reconsideration. (Comm'r's Br. at 12.) There are numerous problems with the Commissioner's arguments.

First, merely stating that evidence was "considered" is insufficient. *See Hultz v. Bisignano*, 162 F.4th 111, 123 (4th Cir. 2025) (noting that "a lengthy seven-page summary" of a medical record contained too little "analysis and discussion . . . to discern which records and what the ALJ based the RFC determinations on"). Second,

10

relying on "unremarkable" cardiac diagnostic tests is particularly problematic in the context of dysautonomia. *See Powell*, 2014 WL 2987663, at *5; *Goodrich v. Comm'r Soc. Sec.*, No. 6:10-CV-1818, 2012 WL 750291, at *11 & n.7 (M.D. Fla. Feb. 7, 2012) (noting that dysautonomia may not cause abnormal cardiac testing results and discussing the general problem with misdiagnosis of dysautonomia), *R. & R. adopted*, 2012 WL 760874 (M.D. Fla. Mar. 8, 2012).

ALJ Andersen's stated reasons for assessing the RFC are also infected by proscribed cherry-picking, *see Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017), and a mischaracterization of the record, *see Arakas v. Comm'r of SSA*, 983 F.3d 83, 98 (4th Cir. 2020). In deciding to fully credit the state agency doctor's RFC assessment at the reconsideration level, ALJ Andersen explained that this reviewing doctor's RFC findings were "consistent with the other evidence throughout the record, such as normal physical exams, negative cardiac workups, and improved dizziness with new glasses and vestibular therapy." (R. 21 (citing administrative record Exhibits "16F/4, 9F/116, 126, 132, 137–140," which correspond to R. 1303, 1041, 1051, 1057, 1062–65).)[6] While it is true one of those citations indicates Plaintiff felt better (R.

---

[6] R. 1303 is a treatment note signature page from a rheumatology clinic that Plaintiff visited in December 2022. No clinical information appears on R. 1303. The full note is found at R. 1300–03. Plaintiff's ophthalmologist referred Plaintiff to the rheumatology clinic regarding an inflammatory eye disease and some right elbow pain. (R. 1301.) The full treatment note from the rheumatology clinic says nothing about Plaintiff's dizziness improving with new glasses or vestibular therapy. (R. 1301–03.)

Three of the remaining citations are excerpts from treatment notes from a neuropsychologist, Dr. Paul Cohen, who saw Plaintiff initially in June 2021 (R. 1061–66), and then again in August 2021 (R. 1056–60) and September 2021 (R. 1051–54). Plaintiff's dizziness is noted consistently in these treatment records. (R. 1051–53,

11

1057), that same treatment note indicates continued problems with dizziness and functioning (R. 1057 (Plaintiff reporting continued symptoms with computer use), 1058 (daily dizziness), 1059 (Plaintiff "reports overall improvement, though continues to endorse headache and dizziness")). The treatment note on R. 1051 indicates that Plaintiff experiences "headache and dizziness during and after work," and that "her dizziness worsened" "after [Plaintiff] got her new computer glasses." (R. 1051.) That same treatment note—again, when read in full—indicates continued problems with dizziness and a lack of improvement with the new glasses. (R. 1052–53.) The ALJ's citation to R. 1062–65 is puzzling because Plaintiff's dizziness is noted throughout. (R. 1062–65.) The ALJ's citation to Dr. Scanlan's clinical findings is similarly puzzling. While the portion of the record referenced by ALJ Andersen contains normal lab and clinical findings (R. 1041), Dr. Scanlan noted that Plaintiff was "unable to perform treadmill exercise because a concussion last year left her with dizziness and inability to walk on a treadmill." (R. 1038–40). In sum, the portions of the record referenced by ALJ Andersen for the proposition that Plaintiff's dizziness improved with new glasses and vestibular therapy do not support that proposition. Rather, those references tend to support Plaintiff's statements. This is a combination of proscribed cherry-picking and mischaracterization of record evidence. *See Lewis v*, 858 F.3d at 869; *Arakas*, 983 F.3d at 98.

---

1057–59, 1062–65.)

The last remaining citation (R. 1041) is an excerpt from a December 2021 treatment note by Plaintiff's cardiologist, Dr. James Scanlan, which repeatedly notes Plaintiff's dizziness. (*See* R. 1038–40.)

The Commissioner argues that the ALJ's characterization of the record was accurate, "as Plaintiff indeed reported some improvement in her symptoms with treatment." (Comm'r's Br. at 12 n.2. (citing R. 1057, 1177, 1378).) The Commissioner's citation to R. 1057 for the proposition that Plaintiff reported improvement is dubious, at best. That page indicates that "Plaintiff states she feels better than last visit, though estimates that she is 50% back to baseline functioning during the week due to work." (R. 1057.) It also indicates that Plaintiff is only working half days from home and "continues to experience symptoms with computer use." (*Id.*) Moreover, Plaintiff's dizziness is noted throughout. (R. 1058–59.)

Furthermore, ALJ Andersen did not cite R. 1177 & 1378. The Commissioner's reliance on these portions of the record is proscribed post-hoc rationalization. More troubling, though, the Commissioner engages here in the same type of cherry-picking and mischaracterization of the record as ALJ Andersen. *See Lewis*, 858 F.3d at 869; *Arakas*, 983 F.3d at 98. Page 1177 of the record is a cardiopulmonary clinical treatment note from September 2022. While the note indicates that Plaintiff reported she was "feeling good today," the very next sentences state: "Reports it has overall been a bad week. Was dizzy all day after PT on Wednesday, as well as on Thursday." (R. 1177.) Similarly, R. 1378 is a cardiology treatment note from November 2022. It states that Plaintiff "has been doing fairly well from a cardiac standpoint." (R. 1378.) However, that same note references a medical history of orthostatic intolerance and indicates Plaintiff has "persistent symptoms of lightheadedness and dizziness" and

13

"endorses symptoms of lightheadedness and dizziness, even while sitting for about 40 minutes, . . . and brain fog." (R. 1378.)

The Commissioner's final argument regarding the ALJ's reliance on the state agency doctor who reviewed Plaintiff's claim at reconsideration is rejected. The state agency doctor's explanation for his RFC assessment on reconsideration contains no explanation for his RFC findings. That doctor merely asserts RFC limitations (R. 80) and summarizes evidence (R. 81). This is different from *Sizemore*, 878 F.3d at 80–81, where the medical opinions of the reviewing state agency doctors contained explanations for their RFC findings. *See Sizemore*, 878 F.3d at 80–81. ALJ Andersen cannot rely on the state agency doctor's RFC findings to fulfill the ALJ's duty to explain the RFC assessment where the state agency doctor did not explain his findings either.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that the Commissioner's decision be REVERSED and the matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 3, 2026**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or

modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. (May 2023).

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 13th day of February 2026.

_____
KIMBERLY A. SWANK
United States Magistrate Judge

15